[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11003
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cv-80736-KLR

MICHAEL SHANE ENTERPRISES, LLC,
a Florida limited liability company,

Plaintiff - Counter Defendant - Appellant,

MICHAEL SHANE,
individually,

Cross Defendant - Counter Defendant,

versus

COURTROOM CONNECT CORP.,
a foreign corporation,

Defendant - Counter Claimant -
Cross Claimant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(November 21, 2016)

Before HULL, MARCUS, and EDMONDSON, Circuit Judges.

PER CURIAM:

Michael Shane Enterprises, LLC ("MSE") appeals the district court's grant of partial summary judgment in favor of Courtroom Connect Corporation on MSE's civil action for breach of contract. No reversible error has been shown; we affirm.

This case involves a series of contracts entered into between MSE and Courtroom Connect pursuant to which MSE was to provide consulting services to Courtroom Connect in exchange for compensation. First, on 28 February 2012, MSE and Courtroom Connect entered into a "Sales Commissions Agreement." In pertinent part, the Sales Commissions Agreement provided that Courtroom Connect was to pay MSE (1) $5,000 per month plus (2) a monthly bonus equal to 10% of gross sales in excess of $50,000 on certain products. The agreement

2

purported to be "non-cancelable for any reason whatsoever (including death)."

The agreement contained no description of MSE's obligations under the contract.

On 5 April 2012, MSE entered into an "Equity Share Agreement" with David Feinberg, Courtroom Connect's Chief Executive Officer.  Under the terms of this agreement, Feinberg agreed to transfer to MSE 30% of Feinberg's equity interest in Courtroom Connect in the event Courtroom Connect was either sold or obtained a round of financing.  Like the Sales Commissions Agreement, the Equity Share Agreement contained no description of MSE's obligations under the contract.

On 7 December 2012, MSE and Courtroom Connect entered into an "Equity Transaction Agreement," which incorporated and superseded expressly the Equity Share Agreement between MSE and Feinberg.  Under the terms of the Equity Transaction Agreement, MSE agreed to perform certain enumerated "management, development, marketing, and organizational services" for Courtroom Connect.  As compensation for those services, Courtroom Connect agreed to transfer to MSE 10% of the gross proceeds of any sale of the business or of additional rounds of financing.  The agreement specified a 10-year term and was "non-cancellable."

Four months later, on 16 April 2013, MSE and Courtroom Connect entered into another contract: the "Strategic Marketing Agreement."  This agreement purported to incorporate and supersede the Sales Commissions Agreement.  Under

the terms of the Strategic Marketing Agreement, MSE agreed to provide to Courtroom Connect the same "management, development, marketing, and organizational services" already set forth in the Equity Transaction Agreement.  In exchange for those services, Courtroom Connect agreed to pay MSE (1) $7,700 per week plus (2) a monthly bonus equal to 12.5% of every dollar of revenue collected above $400,000.  The Strategic Marketing Agreement was to "run concurrently" with the remainder of the Equity Transaction Agreement's 10-year term.  The agreement was "non-cancellable," except under specific "narrow" circumstances in which Courtroom Connect could terminate the agreement with 30 days' written notice.

Courtroom Connect ultimately stopped making payments to MSE in November 2013.  MSE then filed this civil action, alleging claims for breach of contract and for promissory estoppel.

The district court granted partial summary judgment in favor of Courtroom Connect on MSE's claims based on the Strategic Marketing Agreement.[1]  In particular, the district court concluded that the Strategic Marketing Agreement was void for lack of consideration.  This appeal followed.[2]

---

[1] The district court later dismissed without prejudice MSE's remaining claims against Courtroom Connect based on the Equity Transaction Agreement.  The district court entered final judgment in favor of Courtroom Connect on MSE's claims based on the Strategic Marketing Agreement.

[2] On appeal, MSE raises no challenge to the district court's grant of summary judgment on MSE's claim for promissory estoppel under the Strategic Marketing Agreement: that claim is,

We review <u>de novo</u> the district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. <u>Holloman v. Mail-Well Corp.</u>, 443 F.3d 832, 836-37 (11th Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Strategic Marketing Agreement is governed by Delaware law. Delaware courts have said "[i]t is the blackest of black-letter law that an enforceable contract requires an offer, acceptance, and consideration." <u>E.g., Cigna Health & Life Ins. Co. v. Audax Health Sols., Inc.</u>, 107 A.3d 1082, 1088 (Del. Ch. 2014). "Consideration" is defined as "a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request." <u>Cont'l Ins. Co. v. Rutledge & Co.</u>, 750 A.2d 1219, 1232 (Del. Ch. 2000). "A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract." <u>Id</u>. Instead, a promisee incurs a "sufficient legal detriment" "if it promises or performs any act . . . which it is not obligated to promise or perform <u>so long as it does so at the request of the promisor and in exchange for the promise</u>." 3 Williston on Contracts § 7.4 (4th ed. 2016) (emphasis added) (cited with approval by Delaware courts); <u>see also</u>

_____

thus, not before us on appeal. MSE's promissory estoppel claim was based on MSE's reliance on Feinberg's assurance that Feinberg was authorized to execute the Strategic Marketing Agreement on behalf of Courtroom Connect.

Cont'l Ins. Co., 750 A.2d at 1233 (contract modification was unenforceable for lack of consideration because, although defendants incurred greater expenses under the modified terms, nothing evidenced that those expenses were incurred "in exchange for a modification" of the contract or "as an inducement for [plaintiff's] promise to amend the agreement").

The district court committed no error in concluding that the Strategic Marketing Agreement was void for lack of consideration. Between 7 December 2012 and 15 April 2013, the relationship between Courtroom Connect and MSE was governed by two contracts: the Sales Commissions Agreement and the Equity Transaction Agreement. Under the Sales Commissions Agreement, MSE was entitled to receive ongoing monthly fees in exchange for unspecified consulting services. Meanwhile, under the Equity Transaction Agreement, MSE was entitled to a contingent equity interest in Courtroom Connect in exchange for specific enumerated consulting services.

The parties then entered into the Strategic Marketing Agreement, which superseded the Sales Commissions Agreement, but left intact the Equity Transaction Agreement. For the Strategic Marketing Agreement to be enforceable under Delaware law, MSE must show, in pertinent part, the existence of consideration. See Cigna Health & Life Ins. Co., 107 A.3d at 1088.

6

Because the consulting services MSE was obligated to perform under the Strategic Marketing Agreement were identical to those services MSE was already obligated to perform under the Equity Transaction Agreement, MSE cannot rely on those pre-existing duties as consideration.  See Cont'l Ins. Co., 750 A.2d at 1232.

About the existence of consideration, MSE relies instead on the termination clause in the Strategic Marketing Agreement which allowed Courtroom Connect to terminate the contract under certain conditions: a right that Courtroom Connect lacked under the Sales Commissions Agreement.  Nothing evidences, however -- nor does MSE contend -- either that Courtroom Connect requested the inclusion of the termination clause or that the termination clause otherwise induced Courtroom Connect's promise to pay MSE substantially increased consulting fees.[3]  In the absence of evidence that the termination clause was a bargained-for term, it constitutes no consideration under Delaware law.  See Cont'l Ins. Co., 750 A.2d at 1233.  We affirm the district court's grants of partial summary judgment in favor

---

[3] In addition to providing a more lucrative bonus structure, the Strategic Marketing Agreement entitled MSE to receive $7,700 per week instead of $5,000 per month.

7

of Courtroom Connect.

AFFIRMED.[4]

---

[4] On appeal, MSE also contends that the Strategic Marketing Agreement and the Equity Transaction Agreement should be read together as reflecting the parties' intent for MSE to receive two forms of compensation -- ongoing consulting fees and a contingent equity interest -- in exchange for MSE's consulting services.  Because MSE failed to raise this argument in the district court, the argument is not properly before us.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).  Moreover, MSE's argument about the parties' intent is immaterial to whether -- as a matter of Delaware contract law -- the Strategic Marketing Agreement was void for lack of consideration.